UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILBUR E. GIFFORD III, individually,
and on behalf of all those similarly
situated; PAUL VANN, individually,
and on behalf of all those similarly
situated; and TESS FULLER, individually,
and on behalf of all those similarly
situated; BERNICE SOLOMON,
EMORY SOLOMON, DEBBIE BOHNER,
SUSAN BOHNER, KENNETH BRIGHAM,
LASSIE CANTRY HOLLOWAY, CARL HALLOWAY,
JALYNA CANTY, VERONICA AGEE-KELLUM,
OLENZIA EVANS, BERNADETTE EVANS,
HELEN MADISON, LEROY CARNEGIE

       Plaintiffs,        Case No.: 8:08-cv-00112-T-17-MSS

v.

CITY OF TAMPA, a municipal corporation

       Defendants.
_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on Defendant, City of Tampa's, motion for summary judgment (Doc. No.45), and Plaintiffs' response (Doc. No. 55) thereto. Plaintiffs have additionally filed several affidavits in support of their response (Doc. No. 59).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986). That burden can be discharged if the moving party can show the Court that there is "an absence of evidence to support the nonmoving party's case." Id. at 323, 325. When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. Id. at 324.

Issues of fact are "genuine" only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." Anderson, 477 U.S. at 249. Material facts are those that will affect the outcome of the trial under governing law. Id. at 248; see also Hickson Corp. v. Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004). In determining whether a material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. Sweat v. Miller Brewing Co., 708 F.2d 655 (11th Cir. 1983).

<u>UNDISPUTED FACTS</u>

The Plaintiff, Wilbur E. Gifford III, at all times material, was the owner of real property located at 4402 East Hillsborough Avenue, Tampa, Florida 33610, generally referred to as "Endgate Mobile Home Park." (Doc. No. 2 ¶ 3). The Park consisted of ninety-nine (99) concrete mobile home pads, of which eighty-two (82) had mobile homes. The property had additional physical improvements including twelve (12) apartments, a recreation center, nine (9) duplex units, and a restaurant, which was used as a storage unit. Of the eighty-two (82) mobile homes on the property, Gifford owned sixty-three (63). All other named plaintiffs are either owners or tenants in the mobile

homes located at the Endgate Park. (Doc. No. 45). The City of Tampa is a municipal corporation organized and existing under the laws of the State of Florida. (Doc. No. 2 ¶ 2).

The parties agree that the City of Tampa ordered the destruction of Endgate Mobile Home Park. At issue is the exact condition of the property and the events leading up to its destruction. On August 18, 2003, Gifford met with Tampa code enforcement officer Don Scott, on the subject property, about certain alleged violations of the City of Tampa Municipal Code ("the Code") and an upcoming code enforcement hearing scheduled for August 20, 2003. (Doc. No. 59, Gifford Affidavit ¶ 12). At the code enforcement hearing, the Hearing Master determined that Gifford had complied with three violations pertaining to "Deteriorated Structure," and gave him sixty days until around October 23, 2003, to cure other violations for "Accumulations" (unsightly items on the subject property), "Inoperative Vehicles." and "Public Nuisances." ( Id., ¶ 15).

On September 7, 2003, Tampa Mayor Pam Iorio visited the Endgate Park with Tampa Fire Department personnel. ( Id., ¶ 16). The next morning, on September 8, 2003, Tampa code officials Susan Sexton and Mike Williams visited the park. (Doc. No. 45, Williams affidavit, Sexton affidavit). Over the course of the next several days, representatives of Tampa Code Enforcement commenced a series of inspections. On or around September 10, 2003, Tampa Electric Company terminated electrical service to the park. (Doc. No. 45, Williams affidavit ¶10). The termination of electrical service to the park resulted in the water system of the park becoming inoperable. During the remaining days of September, demolition of the trailer park commenced. The parties disagree on the timing and existence of the notice given to Gifford and the residents of the Endgate Park. During this time, all residents of the park were advised to immediately vacate their trailers and many were given $500.00 vouchers from the City of Tampa. (Doc. No. 59, multiple affidavits). During the course of these events, Gifford was cited and served with a Notice to Appear for violation of City

of Tampa Minimal Housing Standards. As part of the service of the Notice to Appear Gifford was fingerprinted.

On October 1, 2003, Gifford filed Notices of Appeal to challenge the City of Tampa's actions. On October 8, 2003, Gifford attended the corresponding public hearing before the Code Enforcement Board. The Code Enforcement Board could not reach an agreement on what action to take on Gifford's appeal and rescheduled the hearing for November 26, 2003. (Doc. No. 55, Exhibit O). On that date, the Board found Gifford's appeal "to be moot, the units having been demolished prior to appeal, and the Board render no further decision on the same. The Motion was adopted unanimously. Ordered this 26th day of November, 2003." (Doc. No. 55, Exhibit H). Gifford then brought the issue before Tampa City Counsel, who also found the issue moot because the property had already been destroyed. (Doc. No. 45, Gifford's Petition for Writ of Certiorari). Gifford then appealed to the Thirteenth Circuit Court for Hillsborough County. That court found "the property involved in the taking, mobile homes, had in fact been taken and destroyed, therefore the matter before the court is moot, since the issuance of any order by this court would have no effect" and, therefore, denied Gifford's Petition for Writ of Certiorari. (Doc. No. 55, Exhibit N).

## DISCUSSION

### I. INVERSE CONDEMNATION (Counts I & II)

Plaintiffs allege that the "City of Tampa's actions were unlawful and in violation of their own code, state law and the Florida Constitution." (Doc. No. 2. ¶ 117, 129). Furthermore, Plaintiffs claim they are "entitled to full compensation pursuant to Article X, Section 6 of the Florida Constitution." (Doc. No. 2. ¶ 119, 131). Therefore, Florida law will guide the Courts analysis of this issue. See State Farm Fire and Casualty Company v. Steinberg, 393 F.3d 1226, 1231 (11th Cir. 2004).

There is no disagreement between the parties that Plaintiffs' property has been destroyed; at issue is whether the destruction requires compensation. If the City of Tampa is found to have acted under its police power, Plaintiffs would be due no compensation. The Florida Supreme Court has stated that "[t]o destroy property because it is a public nuisance is not to appropriate it to public use, but to prevent any use of it by the owner, and to put an end to its existence, because it could not be used consistently with the maxim, sic utere tuo ut alienum non laedas."[1] State Plant Bd. v. Smith, 110 So. 2d 401 (Fla. 1959) (quoting Bowman v. Virginia State Entomologist, 105 S.E. 141, 145 (Va. 1920)). If the destruction is found to be a "taking", Plaintiffs would be owed full compensation for their property. The Florida Constitution states that, "[n]o private property shall be taken except for a public purpose and with full compensation therefor paid to each owner . . . ." Fla. Const. Art. X, § 6(a) (2009). The Florida Supreme Court has stated that:

> There is no settled formula for determining when the valid exercise of police power stops and an impermissible encroachment on private property rights begins. Whether a regulation is a valid exercise of the police power or a taking depends on the circumstances of each case. Some of the factors which have been considered are:
>
> 1. Whether there is a physical invasion of the property.
>
> 2. The degree to which there is a diminution in value of the property. Or stated another way, whether the regulation precludes all economically reasonable use of the property.
>
> 3. Whether the regulation confers a public benefit or prevents a public harm.
>
> 4. Whether the regulation promotes the health, safety, welfare, or morals of the public.
>
> 5. Whether the regulation is arbitrarily and capriciously applied.
>
> 6. The extent to which the regulation curtails investment-backed expectations.

---

[1] Use what is yours so as not to harm what is others

Graham v. Estuary Properties, Inc., 399 So. 2d 1374, 1380-1381 (Fla. 1981). Furthermore, owners may institute an inverse condemnation proceeding for both real and personal property. See Kirkpatrick v. Jacksonville, 312 So. 2d 487, 489 (Fla. 1st Dist. App. 1975). Additionally, "It is well settled in [Florida] that injunctions issued to abate public nuisances must be specifically tailored to abate the objectionable conduct, without unnecessarily infringing upon the conduct of a lawful enterprise." Keshbro v. City of Miami, 801 So. 2d 864, 876 (Fla. 2001).

Plaintiffs have successfully raised a genuine question of material fact. Specifically, Plaintiffs have shown facts that question the reasonableness of the City of Tampa's actions in condemning Plaintiffs' property. Plaintiffs have shown facts that could establish the City of Tampa destroyed property (concrete pads, personal property, individual trailers) that was not a nuisance, hazard, or emergency. Therefore, City of Tampa's motion for summary judgment, as to Counts I and II, are **DENIED**.

## II. CIVIL RIGHTS-DUE PROCESS (Count IV & VII)

A Section 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a property interest protected by the Constitution; (2) state action; and (3) a constitutionally-inadequate process. See Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003); Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994). In the case at bar, the first two elements are not in dispute. Gifford was the owner of the subject property and the residents leased the mobile homes from Gifford. Clearly, Gifford and the residents enjoyed a constitutionally-protected property interest in the subject property. See Greene v. Lindsey, 456 U.S. 444, 450-451 (1982) (concluding that continued residency in leasehold property is a "significant interest in property" subject to due process protection). It is also undisputed that the actions of City of Tampa employees constituted "state action" for the purposes of Section 1983, as the City of Tampa is a

municipal corporation organized and existing under the laws of the State of Florida. (Doc. No. 2 ¶ 2). At issue is the adequacy of the process Gifford and the residents received. The Eleventh Circuit has said that:

> There can be no doubt that, at a minimum, the Due Process Clause requires notice and the opportunity to be heard incident to the deprivation of life, liberty or property at the hands of the government. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656-57, 94 L.Ed. 865 (1950). And it is equally clear that the government must provide the requisite notice and opportunity for a hearing "at a meaningful time and in a meaningful manner," although in "extraordinary situations" the provision of notice and a hearing may be postponed until after the deprivation has occurred. Fuentes v. Shevin, 407 U.S. 67, 80, 90, 92 S.Ct. 1983, 1994, 1999, 32 L.Ed.2d 556 (1972). If the government fails to comply with the dictates of the Due Process Clause, the aggrieved party can seek compensatory damages and equitable relief under 42 U.S.C. § 1983. McKinney v. Pate, 20 F.3d 1550, 1555, 1557 (11th Cir.1994) (en banc).

Grayden, 345 F.3d at 1232. Emergency evacuation of tenants from a dangerous and potentially life-threatening structure qualifies as an extraordinary situation. When such exigent circumstances exist, tenants may be evicted from a building reasonably-judged unfit for human occupancy without a pre-deprivation hearing. However, such exigent circumstances do not justify the postponement of notice until after eviction. See Grayden, 345 F.3d at 1237.

Plaintiffs have successfully raised a genuine question of material fact. Specifically, Plaintiffs have shown facts that question the existence of an "extraordinary situation." Additionally, Plaintiffs have shown facts that challenge whether the hearings they received post-deprivation qualify as "meaningful hearing[s]" Therefore, City of Tampa's motion for summary judgment, as to Counts IV and VII, are **DENIED**.

### III. FALSE ARREST OF GIFFORD (Count V)

Gifford alleges the City of Tampa acted unlawfully when it "arrested" him by serving him with a Notice to Appear. As part of the service of the Notice to Appear, Gifford was fingerprinted

and given a copy of the Notice. "Florida Statute § 768.28 sets forth the limited occasions when the state's sovereign immunity will be waived. A municipality can be held liable for an intentional tort committed by an employee, provided that the action at issue was within the scope of the employee's employment, and the conduct did not involve bad faith, malicious purpose, or a wanton and willful disregard of human rights, safety, or property." Geidel v. City of Bradenton Beach, 56 F. Supp. 2d 1359, 1365 (M.D. Fla. 1999) (applying Florida law). Section 768.28 is the statutory mechanism through which Gifford claims the City is liable for false arrest.

Under Florida law, false arrest and false imprisonment are different labels for the same cause of action. See Rankin v. Evans, 133 F.3d 1425, 1431 (11th Cir. 1998) (applying Florida law). "False imprisonment is the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and deprivation of his liberty." Johnson v. Weiner, 19 So. 2d 699, 700 (Fla. 1944). A plaintiff must show that the detention was unreasonable and unwarranted under the circumstances. Rivers v. Dillards Dept. Store, Inc., 698 So. 2d 1328, 1331 (Fla. 1st Dist. App. 1997). While it is not necessary that a plaintiff be incarcerated or hauled off to jail to have a viable false arrest claim, there necessarily need be some form of unwanted detention or restraint. See Washington Kennel Club v. Edge, 216 So. 2d 512, 516 (Fla. 1st Dist. App. 1968) (finding that an appellee who was taken into appellant's office and interrogated was falsely arrested); Cline v. Flagler Sales Corp., 207 So. 2d 709, 710 (Fla. 3rd Dist. App. 1968) (finding detention in an automobile sufficient to support a claim of false arrest). "In a false arrest action ... the plaintiff is required only to establish imprisonment contrary to his will and the unlawfulness of the detention.... Probable cause may then be raised and proved by the defendant, as an affirmative defense." Rivers, 698 So. 2d at 1331 (quoting Rotte v. City of Jacksonville, 509 So. 2d 1252, 1253 (Fla. 1st Dist. App. 1987)).

Probable cause is an affirmative defense to a claim of false arrest and is an absolute bar to claims for false arrest. Mills v. Town of Davie, 48 F. Supp. 2d 1378, 1380 (S.D. Fla. 1999) (applying Florida law). "[P]robable cause exists when the circumstances are sufficient to cause a reasonably cautious person to believe that the person accused is guilty of the offense charged." Florida Game and Freshwater Fish Com'n v. Dockery, 676 So. 2d 471, 474 (Fla. 1st Dist. App. 1996).

Gifford has failed to show a genuine issue of material fact by failing to show facts establishing an unlawful restraint. Further, if Gifford were able to establish a viable claim of false arrest, his claim of false arrest must fail as to the affirmative defense of probable cause. Gifford was fingerprinted and served with a Notice to Appear at a Code Enforcement hearing involving his trailer park. No reasonable jury could find that the actions of the Code Enforcement officer were anything but reasonable. Therefore, the City of Tampa's motion for summary judgment, as to count V, is **GRANTED**. Accordingly, it is

**ORDERED** that the motion for summary judgment be GRANTED IN PART, Count V is dismissed with prejudice, and DENIED IN PART, as to all other claims.

**Done and Ordered** in Chambers, in Tampa Florida, this 20th day of July, 2009.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

cc: All Parties and Counsel of Record